IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID ALLEN LAVER,           )
                                 )
          Plaintiff,        )
                                 )
       v.             )   Civil Action No. 22-133-E
                                 )
KILOLO KIJAKAZI,            )
*Acting Commissioner of Social Security*,   )
                                 )
          Defendant.     )

O R D E R

AND NOW, this 15th day of August, 2023, upon consideration of Defendant's Motion

for Summary Judgment (Doc. No. 11) filed in the above-captioned matter on August 23, 2022,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No.

9) filed in the above-captioned matter on July 14, 2022,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN

PART.  Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the

Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and

denied in all other respects.  Accordingly, this matter is hereby remanded to the Commissioner

for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

I.    **Background**

Plaintiff David Allen Laver filed a claim for Disability Insurance Benefits under Title II

of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, on April 2, 2013.  On June 23,

2014, an Administrative Law Judge ("ALJ") found that, although Plaintiff was not under a

disability prior to March 20, 2013, he became disabled on that date.  (R. 134-48).  Plaintiff's case

was reviewed a little over six years later, and on September 2, 2020, the Commissioner

determined that Plaintiff was no longer disabled as of September 20, 2020.  (R. 15, 169-75).

Plaintiff requested reconsideration and a hearing before a State Agency Disability Hearing

Officer, and the determination that Plaintiff was no longer disabled was upheld on April 28,

2021.  (R. 15, 176-77, 195-203).

Plaintiff subsequently sought, and obtained, a telephonic hearing with an ALJ on

September 30, 2021.  (R. 15, 210, 65-88).  On October 21, 2021, the ALJ issued a decision

finding that Plaintiff's disability ended on September 30, 2020 because medical improvement

related to his ability to work had occurred.  (R. 13-26).  The Appeals Council declined to review

the ALJ's decision on April 6, 2022.  (R. 1-3).  Plaintiff filed a timely appeal with this Court, and

the parties have filed cross-motions for summary judgment.

## II. <u>Standard of Review</u>

Judicial review of a social security case is based upon the pleadings and the transcript of

the record.  *See* 42 U.S.C. § 405(g).  The scope of review is limited to determining whether the

Commissioner applied the correct legal standards and whether the record, as a whole, contains

substantial evidence to support the Commissioner's findings of fact.  *See Matthews v. Apfel*, 239

F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security

as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C.

§ 405(g)); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (stating

that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to

determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion.  *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)).  However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  "'Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.'"  *Id.*

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period.  *See Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001).  "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'"  *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).  As noted, the Commissioner here found that Plaintiff met this standard and found him to be disabled as of March 20, 2013.

However, even if a claimant is found to be disabled, pursuant to 20 C.F.R. § 404.1594, the Social Security Administration ("SSA") is required periodically to determine whether "there has been any medical improvement in [the claimant's] impairment(s) and, if so, whether this medical improvement is related to [the claimant's] ability to work."  *Id.* at § 404.1594(a).

Medical improvement is any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the

> most recent favorable medical decision that [the claimant was]
> disabled or continued to be disabled.  A determination that there
> has been a decrease in medical severity must be based on
> improvement in the symptoms, signs, and/or laboratory findings
> associated with [the claimant's] impairment(s).

*Id.* at § 404.1594(b)(1).  If the SSA finds that there has been such a decrease in the severity of the claimant's impairments, it must determine whether this has led to an increase in the claimant's functional capacity to do basic work activities.  *See id.* at § 404.1594(b)(3).  A previously disabled claimant who experiences such medical improvement and an increase in functionality may no longer be entitled to disability benefits.  *See id.* at § 404.1594(g).

In determining whether to continue a claimant's disability, the ALJ handling the matter uses a sequential evaluation process similar to the one used initially in determining whether a claimant is disabled.  *See id.* at § 404.1594.  At the first step, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity.  If so, the disability claim will be denied.  *See id.* at § 404.1594(f)(1).  If not, the ALJ must determine whether the claimant's impairments meet or equal the criteria for a listed impairment.  If a claimant meets a listing, a finding of disability is automatically directed.  *See id.* at § 404.1594(f)(2).  If not, Step Three requires the ALJ to determine whether there has been medical improvement in the claimant's impairments compared to the "comparison point decision" ("CPD") – the most recent favorable finding that the claimant is disabled.  If medical improvement has not occurred, the analysis proceeds to Step Five.  If it has occurred, the analysis proceeds to Step Four.  *See id.* at § 404.1594(f)(3).

At Step Four, if there has been medical improvement, the ALJ must decide whether this improvement is related to the claimant's ability to work.  If it is related, the analysis proceeds to Step Six.  If not, it proceeds to Step Five.  *See id.* at § 404.1594(f)(4).  The fifth step – applicable

if medical improvement has not occurred or if any such improvement is not related to the claimant's ability to work – requires a determination as to whether one of two sets of exceptions apply.  If none apply, disability will continue.  If one of the exceptions in the first set apply, the analysis proceeds to Step Six.  If one of the exceptions in the second set apply, disability will be discontinued.  *See id.* at § 404.1594(f)(5).  At Step Six, the ALJ must determine whether the claimant's current impairments are "severe."  *See id.* at § 404.1594(f)(6).  "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  *Id.* at § 404.1522.  If the claimant's current impairments are not severe, disability ends.  If they are, the analysis continues to Step Seven.

Step Seven requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work.  *See id.* at § 404.1594(f)(7).  If the claimant is unable to resume his or her former occupation, the evaluation then moves to the final step.  At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy.  *See id.* at § 404.1594(f)(8).  In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience.  *See id.*  If the claimant can perform such work, he or she is no longer disabled.

### III.   The ALJ's Decision

In his October 21, 2021 decision, the ALJ found that the most recent favorable medical decision finding Plaintiff to be disabled was the decision issued on June 23, 2014, and determined this to be the CPD.  (R. 16).  The ALJ further found that, as of the date of the CPD,

Plaintiff had numerous severe impairments and that these impairments resulted in an RFC that rendered him disabled.  (R. 16-17).

In applying the sequential analysis, the ALJ found that that Plaintiff's impairments as of September 30, 2020, were the same as in the CPD, continued to be severe, and did not meet any of the listings.  (R. 17-19, 24).[1]  The ALJ proceeded to find that medical improvement had occurred on September 30, 2020, and that, as of that date, the impairments present on the date of the CPD had decreased in medical severity to the point where Plaintiff's RFC had increased.  He found therefore that the medical improvement was related to Plaintiff's ability to work because it resulted in an increase in his RFC.  (R. 18-24).  Specifically, the ALJ found that, as of July 21, 2016, Plaintiff had the RFC to perform medium work, as defined in 20 C.F.R. § 404.1567(c), with the following exceptions:

- He could never climb ladders, ropes, or scaffolds, but could frequently climb ramps and stairs.
- He could frequently balance, stoop, kneel, crouch, and crawl.
- He could frequently finger and handle.
- He must avoid concentrated exposure to vibration, dust, fumes, odors, gases, environments with poor ventilation, wetness, humidity, temperature extremes, and hazards such as unprotected heights, moving machinery, and commercial driving.
- He could perform jobs involving only simple tasks, decisions, and instructions, "simple" being defined as the term is used in the DOT to describe SVP levels 1 or 2.
- He could not work in a fast-paced production environment.
- He must avoid direct/transactional interactions with the general public.
- He could tolerate no more than superficial interaction with coworkers and supervisors, *i.e.*, no more than 32 per cent of the workday.
- He could not perform jobs requiring teamwork or team-type activity.

(R. 18-19).  Significantly, the ALJ did not include in the RFC the limitation that Plaintiff would be off task 20 per cent of the workday due to his impairments that had been included in the CPD. (R. 143).

---

[1]      The ALJ did not make a specific finding as to whether Plaintiff had engaged in substantial gainful activity through the date of the ALJ's decision, but this does not appear to be an issue.

After making this determination, the ALJ found that Plaintiff had no past relevant work. He further found that in light of the testimony of a vocational expert and based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including the representative occupations of linen room attendant, stores laborer, and floor waxer.  (R. 24-25, 84-85).  Accordingly, the ALJ found that Plaintiff's disability ended as of September 30, 2020.  (R. 25-26).

## IV.  Legal Analysis

Plaintiff argues that the ALJ's determination that he underwent a medical improvement beginning on September 30, 2020, and that the medical improvement was related to his ability to work because it resulted in an increase in his RFC, is not supported by substantial evidence.  The Court agrees and, accordingly, remands for reconsideration of this issue.

"A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)."  20 C.F.R. § 404.1594(b)(1).  If there has been such improvement, the ALJ must next determine whether the decrease in the severity of the claimant's impairments has led to an increase in the claimant's functional capacity to do basic work activities.  *See id.* at § 404.1594(b)(3).  This analysis, therefore, requires two distinct findings:

> To apply the medical improvement test, the ALJ must *first* compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most recent favorable medical decision finding the claimant disabled.  *See id.* at § 404.1594(b)(7).  **Then**, in order to determine that medical improvement is related to ability to work, the ALJ must reassess a claimant's residual functional capacity (RFC) based on the current severity of the impairment(s) which was present at claimant's last favorable medical decision.  *See id.* at § 404.1594(c)(2).

*Shepherd v. Apfel*, 184 F.3d 1196, 1201 (10th Cir. 1999) (emphasis added).  *See also Smalls v. Comm'r of Soc. Sec.*, Civ. No. 09-2048 (JLL), 2010 WL 2925102, at *4 (D.N.J. July 19, 2010); 20 C.F.R. § 404.1594(b)(7).  The problem here is that the ALJ, at least in part, conflated the analysis as to whether medical improvement had occurred and the analysis as to whether it related to Plaintiff's ability to work, specifically in regard to his RFC.

In finding that relevant medical improvement had occurred in Plaintiff's conditions, the ALJ relied primarily on Plaintiff's mental health treatment records from in and after September of 2020.  He identified where, in those notes, Plaintiff exhibited normal findings on his mental status examinations and noted where Plaintiff stated that he felt "okay" or "well," that he was tolerating his medication, and that he was sleeping well.  (R. 21-22).  The ALJ also pointed out that Plaintiff could shop, attend appointments, and use public transportation by himself.  (R. 24). He found the contrary opinions in the record indicating that Plaintiff had not experienced medical improvement to be unpersuasive.  (R. 22).  While acknowledging that Plaintiff still had some problematic findings in his mental status exams and still complained of anxiety, depression, irritability, and fatigue after September 30, he attributed these findings to a break in medication and situational stressors and went on to find that the decrease in medical severity of Plaintiff's impairments resulted in a less restrictive RFC and that the medical improvement was therefore related to his ability to work.  (R. 22-23).

What makes the analysis in this case tricky is that it is not clear whether the evidence upon which the ALJ relied supports a finding that Plaintiff's impairments actually improved since the CPD or whether it simply provides a different perspective as to his RFC generally.  Part of the problem is that the ALJ did not sufficiently focus on comparing Plaintiff's medical conditions as of 2020 with those same conditions in March of 2013 when he was first found to be

disabled.  For instance, although the ALJ discussed Plaintiff's treatment notes and mental status examination findings from September 2020 onward in great detail, he did not compare these findings to any earlier findings.  In other words, he did not consider whether the findings were significantly different than they had been prior to September of 2020.  The record here contains the June 2014 decision awarding Plaintiff benefits as of March 2013, but little else from the record of that earlier proceeding other than the transcript of the administrative hearing.  There is no analysis as to how the mental status examinations from after September of 2020, compare to those from March 20, 2013, let alone how they show improvement.  As noted, the ALJ's first task is to "compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most recent favorable medical decision finding the claimant disabled."  *Shepherd*, 184 F.3d at 1201.  That did not happen here.

The ALJ did not even discuss Plaintiff's treatment records from prior to September of 2020 that were in the record.  The earliest mental health treatment records in the administrative record before the Court are from 2019.  However, the ALJ did not discuss these records in any detail and did not offer any explanation as to how or why the records from after September of 2020 differ from those before that date.  The ALJ noted that the later treatment records indicate that Plaintiff claimed at times to be okay or doing well, tolerating his medication, and sleeping well, but there are similar remarks in records from before September 30, 2020.  For instance, on September 11, 2019, Plaintiff was calm and pleasant and expressed that he felt "pretty good"; on November 5, 2019, he appeared calm and cooperative; in January of 2020 he indicated that he felt "pretty good" since his medication was now helping; and on April 15, 2020, he stated that he'd been "doing good."  (R. 389, 399, 408, 411, 474).  The fact that the same kinds of statements can be found in records from before and after the purported date of medical

improvement reinforces the need for a more thorough comparison of Plaintiff's treatment records from after the alleged medical improvement and those from before.

To be sure, there are notations of continued problems – such as anxiety, irritability, fatigue, and dysthymic mood – in the treatment notes from before September 2020; however, notations to such problems are also present after that date.  (R. 477, 481, 486-87, 495).  While the ALJ addressed the continued complaints in the recent treatment records, he generally attributed them to a change in medication and/or situational stressors.  (R. 22-23).  He also, as discussed above, observed that Plaintiff shops, attends appointments, and can use public transportation.  What he did not do is engage in an analysis as to whether these factors also appeared in the treatments records before September 30, and certainly not in those from the time of the CPD.  If he had, he may have addressed how situational stressors, mostly familial, were present and discussed in the records from prior to September 2020 repeatedly.  (R. 393, 396, 402, 417).  Even the June 2014 CPD discusses familial stressors.  (R. 139).  Factors such as Plaintiff's ability to shop, attend appointments, and use the bus were also present in 2013 and discussed in the CPD.  (R. 47-48, 51, 141).  Given that these "mitigating" circumstances appear in the record both before and after September 2020 makes it difficult to see how these factors demonstrate any medical improvement at that time.

As Plaintiff points out, the ALJ's failure to address the Global Assessment of Functioning ("GAF") scores contained in the record further demonstrates that he did not adequately compare the severity of Plaintiff's impairments after September 30, 2020 with the severity of those symptoms from before.  The Court notes that the continued validity of GAF scores in the psychiatric field is somewhat questionable and that GAF scores do not, in any event, directly correlate to a determination of whether an individual is or is not disabled under the Act.  *See* 65

Fed. Reg. 50746, 50764-65.  Indeed, standing alone, a GAF score does not generally evidence an impairment seriously interfering with a claimant's ability to work.  *See Lopez v. Barnhart*, 78 Fed. Appx. 675, 678 (10th Cir. 2003).  Accordingly, there are certainly situations where an ALJ's analysis of a claimant's GAF scores may not be necessary.  That said, the Third Circuit has made it clear that GAF scores are evidence that an ALJ should consider in determining a claimant's impairments and limitations in setting forth the claimant's RFC and in fashioning a hypothetical question to the vocational expert.  *See Irizarry v. Barnhart*, 233 Fed. Appx. 189 (3d Cir. 2007).  This case is a good example of how the scores might be relevant in an ALJ's analysis despite the limitations on their use.

The record contains very little evidence of Plaintiff's GAF scores from the time of the CPD, mentioning only that he was assigned a score of 40 in May 2013.  (R. 145).  However, there are numerous GAF scores contained in the record from the period of about a year before the ALJ found medical improvement to have occurred to almost a year after, and these scores do not support a finding of significant improvement on September 30.  The earliest score, from September 11, 2019, was 50-60.  (R. 392).  A GAF score between 51 and 60 reflects "moderate symptoms."  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed., Text Rev. 2000)(emphasis added).  The latest score in the record, from August 19, 2021, was 40-50, indicative of "serious symptoms."  *Id.*  The record, in fact, demonstrates that Plaintiff's GAF scores fluctuated repeatedly between 50-60 and 40-50 through 2019, 2020, and 2021.  The last GAF score assigned to Plaintiff before September of 2020 was 50-60, whereas the score assigned on September 29, 2020, essentially when improvement supposedly occurred, was 40-50.  (R. 475, 478).

The Court does not mean to imply that these scores conclusively demonstrate that there was no medical improvement, merely that these scores do not, on their face, support a finding of improvement.  Given the ALJ's reliance on the treatment notes containing these GAF scores in finding medical improvement, acknowledgement that the medical providers may not have seen this type of improvement is crucial.  An ALJ, of course, need not discuss every piece of evidence in the record, *see Fargnoli*, 247 F.3d at 42, but here the GAF scores were particularly relevant. Moreover, as discussed, there is no meaningful discussion of Plaintiff's treatment notes from the time of the CPD, including GAF scores, in the ALJ's decision.

The problem with the ALJ's analysis is further reinforced by the fact that he found unpersuasive two opinions finding that there had been no improvement in Plaintiff's mental conditions, those of state reviewing agents Timothy Ostrich (R. 163) and Edward Jonas (R. 491). By no means was the ALJ required to accept these opinions, but his failure to adequately compare the severity of Plaintiff's current impairments with those from the time of the CPD makes the rejection of the two opinions in the record more problematic than it may have been.

The Court is aware of the elephant in the room.  The record shows that Plaintiff had been denied disability benefits multiple times prior to 2013.  Indeed, the ALJ in the CPD denied Plaintiff's claim for benefits prior to March 20, 2013.  The reason Plaintiff was found to be disabled on that date was because the restriction that he would be off task 20 per cent of the workday was added to his RFC; the addition of that one limitation is what made the difference in Plaintiff being found not disabled prior to March 20, 2013, and disabled after that date.  (R. 140, 143).  That restriction appears to have been included in the CPD largely because of opinions from Plaintiff's treating physicians and the consultative examiner from that time and was based, at least in part, on Plaintiff's mental limitations.  (R. 144-45).  The current case revolves largely

around the question of whether the off-task limitation first added in 2013, but not present in RFCs from before that time, should still apply now. There is no question that, if included in the RFC here, this restriction would have again prevented Plaintiff from performing gainful work. (R. 87). This makes precise reference to specific time frames crucial in this case.

Plaintiff suggests that what the record shows, rather than improvement, is that his symptoms "wax and wane" over time. (Doc. No. 10, p. 11). Without a more thorough comparison of Plaintiff's impairments between 2020 and 2013, the Court cannot discount this characterization. Accordingly, further consideration of this matter is warranted. The Court does not find that the record necessarily shows an absence of medical improvement that would impact Plaintiff's ability to work. However, the Court finds that the evidence upon which the ALJ relied in so finding, without further explanation, is insufficient to support such a conclusion. As discussed, upon a finding of medical improvement, the ALJ must determine whether that improvement is related to the claimant's ability to work. That second finding will certainly require a determination of Plaintiff's RFC. However, a finding of medical improvement must come first; merely relying on new RFC findings is not sufficient. A more focused analysis as to the severity of Plaintiff's medical impairments in 2020 in comparison to the severity of those impairments as of the CPD will help this analysis.[2]

---

[2]     Because the Court is remanding on this issue, it makes no finding as to whether the ALJ's decision that Plaintiff experienced medical improvement as to his tremors is supported by substantial evidence. However, the Court notes that, unlike the case with Plaintiff's mental impairments, the ALJ did discuss a clear trend of improvement in the severity of Plaintiff's tremors from "moderately well controlled" on March 18, 2019, to "stable" on January 10, 2020, to "very well controlled" on May 25, 2021. (R. 376, 385, 504).

**V.** **<u>Conclusion</u>**

In short, the Court holds that the finding of the ALJ that Plaintiff, on September 30, 2020, experienced medical improvement related to his ability to work is not supported by substantial evidence.  The Court hereby remands the case to the Commissioner for reconsideration consistent with this Order.

<u>s/Alan N. Bloch</u>
United States District Judge


ecf:        Counsel of record